IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

RHONDA CROWLEY                                                                                    PLAINTIFF


v.                              CASE NO.        11-2163


MICHAEL J. ASTRUE, Commissioner
of Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g).

**I.      Procedural Background:**

The plaintiff filed her applications for DIB and SSI on June 8, 2009 (T. 141), alleging an onset date of May 1, 2009 (T. 175), due to plaintiff's insulin dependant diabetes, burned lungs/aspiration, and problems with her legs and arms (T. 175).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on September 1, 2010.  Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was 46 years of age and possessed a GED.  The Plaintiff had past relevant work ("PRW") experience as a deli manager (T. 183).

On December 14, 2010, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's diabetes mellitus with neuropathy and osteoarthritis did not meet or equal any Appendix 1 listing. T. 17. The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform light work T. 17. With the assistance of a vocational expert, the ALJ then determined Plaintiff could perform the representative occupations of Cashier, General Office Clerk and Interviewer. T. 24.

## II.     Applicable Law:

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Id*. "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v.*

*Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

**III.    Discussion**:

**A.  Relevant Time Period:**

The Plaintiff's date last insured for Title II purposes was June 30, 2010 (Tr. 15, 159). "A title II worker cannot be found disabled under the Act unless insured status is also met at a time when the evidence establishes the presence of a disabling condition." SSR 83-20, 1983 WL 31249, *1 (1983). For Title II benefits, an individual must establish disability as of the date

last insured. See 42 U.S.C. §§ 423(a), (c); 20 C.F.R. § 404.320; *Pyland v. Apfel*, 149 F.3d 873, 876 (8th Cir. 1998) (plaintiff must establish disability before expiration of insured status); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("we will only consider an individual's medical condition as of the date she was last insured"); *Fisher v. Shalala*, 41 F.3d 1261, 1262 (8th Cir. 1994) (claimant required to show existence of disability prior to the expiration of insured status).

The importance of the time period is that the Plaintiff must establish her disability on or before June 30, 2010.

**B. Residual Functional Capacity**

The ALJ found that the Plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently; she could sit for about 6 hours in an 8 hour workday. She can stand and walk for about 6 hours in an 8 hour workday; she could occasionally climb, balance, stoop, kneel, crouch, and crawl; she could occasionally reach over head with her right upper extremity; she could frequently handle and finger." T. 17.

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth

Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing Lauer v. Apfel, 245 F.3d 700 at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner.*620 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

Dr. Stephanie Frisbie was the Plaintiff's treating physician. It appears that Dr. Frisbie first began to treat the Plaintiff in April 2007 when she was seen for diabetes melitus uncontrolled. (T. 325-326). Dr. Friebie then saw the Plaintiff on June 10, 2007 (T. 323-324), February 20, 2008 (T. 320), June 5, 2008 (T. 316-317), October 20, 2008 (T. 314-315). During all of these visits the Plaintiff's diabetes was described as "uncontrolled". On May 5, 2009 the Plaintiff had a major medical event and was admitted to Saint Edwards Mercy Medical Clinic (SEMMC) for diabetic ketoacidosis and was discharged on May 24, 2009.

Dr. Paul Bean, one of the Plaintiff's treating physicians during her admittance to SEMMC, found that the Plaintiff had "type 1 diabetes that is uncontrolled." [1](T. 264).

---

[1] Type 1 diabetes, once known as juvenile diabetes or insulin-dependent diabetes, is a chronic condition in which the pancreas produces little or no insulin, a hormone needed to allow sugar (glucose) to enter cells to produce energy. Type 2 diabetes, which is far more common, occurs when the body becomes resistant to the effects of insulin

The Plaintiff ultimately was diagnosed with respiratory failure, probable aspiration pneumonia/ARDS, pancreatis, renal insufficiency, diabetic ketoacidosis, lactic acidosis and hemodynamic instability. (T. 272). Whether the Plaintiff had Type 1 or Type 2 diabetes is conflicted but the record is clear that her diabetes us uncontrolled.

Dr. Frisbie saw the Plaintiff again on June 3, 2009 (T. 311-313), August 11, 2009 (T. 344-345), and February 2, 2010 (T. 346-347). Dr. Frisbie notes that the Plaintiff had lost her insurance. (Id.).

Dr. Frisbie provided a physical RFC on September 14, 2010. Dr. Frisbie felt that the Plaintiff could only sit for one hour, and could stand and walk for only 30 minutes in an 8 hour workday for a total at one time. During the day she felt that the Plaintiff could only sit for 5 hours and stand or walk for only 2 hours during an 8 hour workday. T. 352. Dr. Frisbie also felt that the Plaintiff could only rarely work above shoulder level and that she could rarely use her right and left upper extremity. She also felt that she could never grasp or finger with her right hand and only occasionally with her left hand. (T. 353). She also felt she could only occasionally bend (T. 353), rarely squat, stoop or twist, and could never crawl crouch or kneel. (T. 354). She also would impose sever restrictions in regards to climbing. (Id.).

The opinion of a treating physician is accorded special deference and will be granted controlling weight when well-supported by medically acceptable diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2); *Prosch v. Apfel*, 201 F.3d 1010, 1012-13 (8th Cir. 2000).

---

or doesn't make enough insulin. See www.mayoclinic.com

The ALJ however stated that "Dr. Frisbee's physical residual functional capacity assessment is submitted after the hearing is given little weight. Dr. Frisbee's own records fail to reveal a type of significant clinical and laboratory abnormalities one would expect if Ms. Crowley were in fact disabled, and the doctor did not specifically address this weakness. Additionally, although the doctor does have a treating relationship with Ms. Crowley, the record reveals that actual treatment visits have been relatively infrequent. Finally, the doctor's opinion appears to rest at least in part on an assessment of impairments outside the doctor's area of expertise." T. 22.

The only other RFC assessment is by a non-examining consultive physician performed on November 17, 2009. Dr. Takach found that the Plaintiff could lift 20 pounds occasionally and 10 pounds frequently. That she could stand and/or walk and sit for six hours in an 8-hour work day and she had no limitations on her ability to push and/or pull (T. 332). He found that she had occasional postural limitations (T. 333) but no manipulative or visual limitations (T. 334). He also found that she had no environmental limitations (T. 335). Dr. Takach acknowledge that there was no medical source statement in the file he reviewed. (T. 337).

The results of a one-time medical evaluation do not constitute substantial evidence on which the ALJ can permissibly base his decision. *See, e.g., Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir.1999) (stating that the opinion of a consultative physician does not generally satisfy the substantial evidence requirement). This is especially true when the consultative physician is the only examining doctor to contradict the treating physician. *Id.; See also Cox v. Barnhart* 345 F.3d 606, 610 (C.A.8 (Ark.),2003).

The Plaintiff appears to have been first diagnosed with Carpel Tunnel Syndrome in

February 2008 (T. 320) when she had a positive Phalen's Sign[2]. The Plaintiff had complained that her hands were numb and tingling which is the main symptom for carpal tunnel syndrom. It is also significant that diabetes can be a contributing factor to the disease.

  The ALJ has a duty to fully and fairly develop the record.  *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43 at 45 (C.A.8 (Ark.), 1994).That duty may include seeking clarification from treating physicians if a crucial issue is undeveloped or underdeveloped. Id.

  In this case the ALJ felt that the Plaintiff had the RFC to "frequently handle and finger." (T. 17) while her treating physician felt that her ability to grasp and use her fingers for fine manipulation was severely limited (T. 353).  No specific testing was performed on the Plaintiff to determine her abilities in these regards and the court believes remand is necessary to allow a consultive examination for appropriate testing.

**IV. Conclusion:**

  Accordingly, the court finds that the ALJ's decision is not supported by substantial evidence, and therefore, the denial of benefits to the Plaintiff should be reversed and this matter should be remanded to the Commissioner for further consideration.

  Dated  this August 30, 2012.

---

[2] Phalen's maneuver, test Neurology Paresthesias over the median nerve evoked by maximum passive flexion of the wrist for 1 min, a finding in entrapment neuropathy.  See http://medical-dictionary.thefreedictionary.com/Phalen+sign.

/s/ J. Marschewski
HONORABLE JAMES R. MARSCHEWSKI
CHIEF UNITED STATES MAGISTRATE JUDGE